IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| F.R.P.,<br><br>               Petitioner,<br><br>     v.<br><br>CAMMILLA WAMSLEY, Seattle Field Office Director, Immigration and Customs Enforcement and Removal Operations ("ICE"/"ERO"), TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, KRISTI NOEM, Secretary of the Department of Homeland Security ("DHS"), and U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>               Respondents. | Case No.: 3:25-cv-01917-AN<br><br>Agency Case No.: A218 030 879<br><br>OPINION AND ORDER |

Petitioner F.R.P., a Mexican native and citizen, is a recognized victim under the Violence Against Woman Act. The Department of Homeland Security granted him deferred action in 2023, and he currently has a pending application for permanent residency. On October 17, 2025, Immigration and Customs Enforcement officers detained petitioner despite his deferred action status and without making an individualized determination as to whether petitioner is a flight risk or a danger to the community. Petitioner seeks a temporary restraining order that would, among other things, require his immediate release from detention. After reviewing the parties' filings, including the parties' request to submit this motion on the papers, the Court determined that oral argument would not help reach resolution and thus took the matter under submission pursuant to Local Rule 7-1(d). For the following reasons, the Court now grants petitioner's motion for a temporary restraining order and orders respondents to immediately release petitioner and to refrain from re-detaining petitioner during the pendency of this litigation.

1

## LEGAL STANDARD

Temporary restraining orders are subject to substantially the same factors as preliminary injunctions. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), *overruled on other grounds by Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Generally, a plaintiff seeking a preliminary injunction must show: (1) the plaintiff "is likely to succeed on the merits"; (2) the plaintiff "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [the plaintiff's] favor"; and (4) "an injunction is in the public interest." *Id.* at 20. When the government is a party to an action, the balance of equities and public interest factors merge. *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018).

The Ninth Circuit also employs a "serious questions" test which dictates that "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011) (internal quotation marks omitted).

## BACKGROUND

Petitioner is a native citizen of Mexico, and a survivor of domestic violence. 1st Am. Pet. ("Amend. Pet."), ECF [14], ¶ 4; Pet'r Reply Supp. Mot. for TRO (Pet.'r Reply), ECF [12], at 4 (citation omitted). He is the father of a fourteen-year-old United States citizen who he supports emotionally, as well as financially with earnings from a job at a local car dealership. Pet'r Reply 14. There is no evidence that petitioner has a criminal record, other than a December 2018 charge that was ultimately dismissed. *See* Decl. of Robert Andron, Jr. Supp. Resp'ts Opp'n to Pet. & TRO Mot. ("Andron Decl."), ECF [9], ¶ 5.

For over a decade, petitioner was physically and emotionally abused by his wife. Pet'r Reply 10. On October 21, 2020, petitioner filled out an I-360 petition for special immigrant status under the Violence Against Women Act ("VAWA"). Am. Pet. ¶ 7; *see* Pet., ECF [1], at Ex. A. On January 28,

2021, the United States Citizenship and Immigration Services ("USCIS") found that petitioner established a *prima facie* case under the self-petitioning provisions of VAWA.  Pet. Ex. A.

On or around November 2, 2023, petitioner's I-360 petition was approved, and petitioner was consequentially granted deferred action status.  Am. Pet. ¶ 8; Pet. Ex. B.  The I-797 notice of action (the "Approval Notice") granted petitioner employment authorization and provided directions on applying for permanent residency.  Pet. Ex. B at 1.  Under the "Initial Grant of Deferred Action" portion, the Approval Notice provides that:

> "USCIS[] has decided to place this case under deferred action, which is an administrative choice to give some cases lower priority for removal.  Therefore, USCIS does not anticipate instituting action for removal at this time.  Deferred action will remain in effect for a period of 15 months from the date of this notice, unless terminated earlier by USCIS for reasonable cause and upon appropriate notice. . . .
> "In order to extend your Deferred Action status (DAS), you must submit your request in writing or file Form I-765 for Employment Authorization . . . .  If you still qualify, Deferred Action will be extended at the time your application for employment or written submission is approved."

*Id.* at Ex. B at 2.  Petitioner's deferred action status was therefore set to expire in February 2025.  However, petitioner subsequently sought and was granted employment authorization.  *See* Pet'r Reply Ex. A. Petitioner's deferred action status was therefore extended through November 1, 2025.  *See id.*  On or around February 24, 2025, petitioner filed an application for adjustment of status with USCIS, seeking permanent residency in the United States.  Pet. Ex. C.

On October 17, 2025, petitioner alleges that respondents violently detained him without explanation.  Am. Pet. ¶ 10.  Immigration and Customs Enforcement ("ICE") officers brought petitioner to a local hospital where he was treated for an elevated heart rate and then discharged to ICE custody.  *See id.* ¶ 10; *see also* Pet'r Reply 3.  Respondents state that petitioner is being charged as inadmissible under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act.  Andron Decl. ¶ 11.

After petitioner was discharged to ICE custody, a hospital staff member contacted petitioner's attorney and informed him of petitioner's hospitalization and detention.  Pet'r Mot. for TRO ("TRO Mot."), ECF [2], at 3; Pet'r Reply 3.  Petitioner's counsel then called the Portland ICE office and was told that petitioner was not yet in their system.  TRO Mot. 3; Pet'r Reply 3.  Respondents claim that

petitioner is scheduled for an initial master calendar hearing with the Tacoma Immigration Court on November 4, 2025.  Resp'ts Opp'n to Pet. & TRO Mot. ("Resp'ts Opp'n), ECF [8], at 4; Andron Decl. ¶ 12.  However, as of October 24, 2025, the Immigration Court had no record of petitioner's case, and it appeared that petitioner was not in the Immigration Court's system.[1]  Pet'r Reply 4 & Ex. B.

At 12:29 p.m. on October 17, 2025, petitioner filed his petition for writ of habeas corpus (the "habeas petition") and motion for a temporary restraining order (the "TRO motion").  Respondents notified the Court that petitioner was taken out of Oregon and transported to the Northwest Detention Facility in Tacoma, Washington at 3:24 p.m. on October 17, 2025.  *See* Order of October 17, 2025, ECF [7].  Based on the timing of petitioner's filing, the Court found that it had subject matter jurisdiction over the habeas petition and ordered respondents not to transport petitioner any further.  *Id.*  On October 22, 2025, respondents responded in opposition to the habeas petition and TRO motion.  Later that day, petitioner filed a reply in support of his habeas petition and TRO motion.

The Court held a telephone status conference on October 23, 2025, during which it set a briefing schedule and, among other things, ordered respondents to ensure that petitioner's counsel has reasonable access to their client.  Mins. of Proceedings of October 23, 2025, ECF [13].  Pursuant to that briefing schedule, petitioner filed an amended petition correcting clerical errors on October 23, 2025, and respondents filed a sur-reply in further opposition to petitioner's habeas petition and TRO motion on October 27, 2025.  Resp'ts Sur-Reply Opp'n Pet. & TRO Mot. ("Resp'ts Sur-Reply"), ECF [16].  On October 28, 2025, the parties filed a joint status report indicating that neither party was requesting oral argument on either the habeas petition or the TRO motion and that both were ready for submission.  Joint Status Rep., ECF [17].  The Court subsequently took the TRO motion under consideration.  Order of October 28, 2025, ECF [18].

**DISCUSSION**

---

[1] This is the most recent update the Court has received on petitioner's case status with the Immigration Court.  Neither party has filed any subsequent updates about whether petitioner is in the Immigration Court's system or whether petitioner has a hearing set for November 4, 2025.

Petitioner has shown that there are at least serious questions going to the merits of his procedural due process claim, he is likely to suffer irreparable harm absent preliminary relief, and the balance of hardships and public interest tip sharply in his favor.

## A.     Likelihood of Success on the Merits

Petitioner has demonstrated, at minimum, serious questions going to the merits of his due process claims.[2]  Petitioner argues that he is likely to succeed because he was detained without a valid purpose or sufficient procedure: despite his deferred action status, he was detained without explanation or being declared a flight risk or danger to the community.  TRO Mot. 5; *see* Pet'r Reply 11-12.  This, petitioner argues, violates procedural and substantive due process, as well as respondents' own policies.  TRO Mot. 5; *see* Pet'r Reply 11-12.  Respondents counter that ICE is not barred from initiating removal proceedings against those with deferred action status and that ICE may detain people and initiate these proceedings without a flight risk or danger assessment.[3,4]  Resp'ts Opp'n 10-11.  Boiled down, the merits question here turns on whether respondents have free reign to detain a deferred action recipient without a pre-detention hearing or individualized determination.  Legal precedent strongly suggests that they do not.

The Due Process Clause of the United States Constitution protects all "person[s]" from deprivation of "of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  Long-settled authority unequivocally holds that this protection applies to all "persons" in the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001).  Moreover, "[f]reedom

---

[2] Because the merits prong is satisfied for petitioner's procedural due process claims, the Court does not reach the merits of petitioner's substantive due process and administrative policy-based claims. *See All. for the Wild Rockies*, 632 F.3d at 1139 (declining to reach remaining claims after finding "serious questions" on the merits of one claim).

[3] Respondents initially also argued that petitioner's deferred action status had expired before his detention, based on the Approval Notice's grant of fifteen months of deferred action. *See* Resp't Opp'n 2-3.  However, petitioner corrected the record in his reply, showing that he extended his deferred action status by applying for employment authorization. *See* Pet'r Reply Ex. A.  Respondents did not argue in their sur-reply or subsequent filings that petitioner was incorrect about this extension or that petitioner's status was otherwise expired.

[4] To the extent that petitioner's argument relies on Department of Homeland Security ("DHS") and ICE policies, respondents also argue that the policies are discretionary and, regardless, largely overturned by a January 20, 2025 Executive Order issued by President Donald J. Trump. *See* Resp'ts Sur-Reply 2 (citing Exec. Order No. 14159, Sec. 3(a), 90 FR 8443 (2025)).  However, for the reason stated above, the Court does not reach the administrative claim and thus need not consider this argument.

from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Id.* There can be no question that the Due Process Clause applies to petitioner. *See Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) ("'It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.'").

What the Court must decide is whether petitioner received sufficient procedures to protect this interest. To do this, courts turn to the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See, e.g.*, *Pinchi v. Noem*, No. 5:25-cv-05632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025) (applying *Mathews* to immigration detention challenges); *see also J.O.L.R., v. Wofford*, No. 1:25-cv-01241-KES-SKO (HC), 2025 WL 2908740, at *5 (E.D. Cal. Oct. 14, 2025) (same). The *Mathews* test looks to (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including . . . the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. Here, each factor weighs in petitioner's favor.

First, it is beyond dispute that petitioner has a protected interest in his freedom. This is not a situation where petitioner is challenging the availability of government benefits afforded to him by deferred action. *Cf. Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). Rather, petitioner is challenging his detention, and respondents do not argue that petitioner lacks a protectable interest here— nor could they. *See Pinchi*, 2025 WL 2084921, at *4-5 (discussing privacy interests in the immigration habeas context).There has been no finding and there is no evidence in the record that petitioner is a flight risk or a danger to the community, and he therefore has a constitutionally protected interest in his freedom from detention. *See Pablo Sequen v. Albarran*, No. 25-cv-06487-PCP, 2025 WL 2935630, at *7 (N.D. Cal. Oct. 15, 2025) ("Noncitizens subject to [Section] 1226(a) therefore have a statutory as well as constitutional interest in remaining out of custody unless they pose a threat to the public or a flight risk."). The first *Mathews* factor favors petitioner.

Second, there is also a serious risk of erroneous deprivation. Civil immigration detention must be "nonpunitive in purpose" and thus reasonably related to the statutorily authorized purposes of preventing flight and reducing the risk of danger to the community. *Zadvydas*, 533 U.S. at 690-91. Respondents do not contend that petitioner is a flight risk or a danger to the community, and the mere fact of his VAWA approval suggests he is neither. *See* 8 U.S.C. § 1154(a)(1)(A)(II)(bb) (requiring that petitioners be "of good moral character"); 8 C.F.R. § 204.2(c)(2)(v) (requiring a criminal background check). Respondents merely argue that there is no statutory authority requiring a flight risk or danger assessment before ICE detains an individual and commences removal proceedings. Reps'ts Opp'n 10. That is of little comfort. It is true that some limited period of detention is constitutionally permissible during removal proceedings in certain circumstances. *See Demore v. Kim*, 538 U.S. 510, 531 (2003).[5] But here, there are serious questions as to whether petitioner is removable at all.

As the Supreme Court recently reiterated, "[t]he defining feature of deferred action is the decision to defer removal (and to notify the affected alien of that decision)." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1911 (2020). Decades prior, the Supreme Court described deferred action as meaning that "'no action will thereafter be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999) (quoting 6 C. Gordon, S. Mailman, & S. Yale–Loehr, Immigr. L. & Proc. § 72.03 [2][h] (1998)). The Ninth Circuit has consistently upheld that understanding. *See, e.g.*, *Lee v. Holder*, 599 F.3d 973, 975 (9th Cir. 2010) (per curiam) (describing deferred action as a "form of parole" and "stay[] of removal"); *Barahona-Gomez v. Reno*, 236 F.3d 1115, 1119 n.3 (9th Cir. 2001) ("Deferred action refers to an exercise of administrative discretion by the [Immigration and Naturalization Services ("INS")] district director under which the INS takes no action to proceed against an apparently deportable alien based on a prescribed set of factors generally related to humanitarian grounds.")

---

[5] Petitioner is also not part of the class of noncitizens that were at issue in *Demore*—namely, noncitizens who had been previously convicted of a specific set of crimes. *See Valencia Zapata*, 2025 WL 2741654, at *12 (distinguishing *Demore*, 538 U.S. at 527).

(internal quotations and citation omitted). Without a particularized finding that petitioner is a flight risk or danger to the community, there is a serious risk that he will face erroneous deprivation of a protected interest. The second *Matthews* factor favors petitioner.

Lastly, the government's interest in holding petitioner without a hearing is low since petitioner is a deferred action recipient and there is no evidence in the record suggesting a change to petitioner's qualifications. *Compare Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) ("The costs to the public of immigration detention are 'staggering.'"), *with Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) (finding the third *Mathews* factor favored the petitioner in an immigration habeas case because "[t]he effort and cost required to provide [the p]etitioner with procedural safeguards is minimal"). Petitioner does not have a history of criminal convictions or flight—indeed, he has a local job and a teenage son he cares for. The third and final *Mathews* factor additionally favors petitioner.

The Court's ruling here accords with the findings of numerous other courts across the country. Several similar cases involving deferred action recipients have arisen in recent months. While some of the petitioners' motions were denied on jurisdictional grounds,[6] *see, e.g.*, *Mboko v. Joyce*, No. 2:25-CV-00240-NT, 2025 WL 1697012 (D. Me. June 17, 2025) (dismissing petition on ripeness grounds); *Velasco Gomez v. Scott*, Case No. 25-cv-0522, 2025 WL 1726465 (W.D. Wash. June 20, 2025) (dismissing petition on jurisdictional grounds), the Court is unaware of any that held that ICE could lawfully detain deferred action recipients without notice or an individualized finding.[7]

---

[6] To be clear, respondents do not here argue that the Court is without jurisdiction, and the Court's review of the record does not suggest that jurisdiction is improper.

[7] The District of New Jersey denied a request for a temporary restraining order in *Pacheco de Oliveira v. Soto* because the court "lack[ed] basic information regarding the purported grounds for his detention, the status of any removal proceedings, or the totality of the circumstances regarding his U-Visa petition (or any other potentially relevant immigration-related proceedings)." No. CV 25-16604 (ES), 2025 WL 2945553, at *4 (D.N.J. Oct. 17, 2025). The petitioner had received a *bona fide* determination on a U visa application and had been granted deferred action accordingly. *Id.* at *2. The court summarily rejected the argument that "it was improper to detain [the petitioner] because he had a bona fide determination granting deferred action" because the petitioner did "not cite any legal authority specifically prohibiting the detention of individuals who have been given deferred action on a U-Visa application." *Id.* at *2 n.1.

In *Primero v. Mattivelo*, the District of Massachusetts granted a writ of habeas corpus for a deferred action recipient who was detained by ICE. No. 1:25-CV-11442-IT, 2025 WL 1899115, at *5 (D. Mass. July 9, 2025). There, the respondents argued that the detention was lawful because 8 U.S.C. § 1231(a)(6) authorizes the Secretary of Homeland Security "'to detain a removable alien indefinitely beyond the removal period or only for a period reasonably necessary to secure the alien's removal.'" *Id.* at *4 (quoting *Zadvydas*, 533 U.S. at 682). Rejecting that argument, the court reasoned that "where [the p]etitioner has shown that USCIS granted him deferred action . . . and where there is no indication that [the p]etitioner's case was reviewed prior to or since detaining him, [the p]etitioner has shown that there is no significant likelihood of his removal in the reasonably foreseeable future." *Id.* at *5. Accordingly, the court held that "the government may not rely on the presumptive period of permissible detention under *Zadvydas* and must afford [the p]etitioner a bail hearing." *Id.*

In *Sepulveda Ayala v. Bondi*, the Western District of Washington granted a motion for a preliminary injunction where a deferred action recipient was arrested and detained by ICE based on a decades-old removal order. No. 2:25-CV-01063-JNW-TLF, 2025 WL 2084400 (W.D. Wash. July 24, 2025). Like here, the petitioner argued that "his detention violates federal law because the Government has deferred his deportation through the grant of deferred action, eliminating any legal basis for his continued confinement." *Id.* at *6. And, like here, the respondents asked the court to rely on a "truncated description" of deferred action provided in a notice document, "which state[d] that 'deferred action is an administrative convenience to the government which gives some cases lower priority for removal.'" *Id.* at *8. The court found that this description was not incongruous with case law establishing that deferred action prevents removal because "giving cases 'lower priority' naturally flows from the Government's decision not to proceed with removal, the core meaning of deferred action." *Id.* Based on a lengthy analysis of the case law addressing deferred action, the court held that "established precedent defines deferred action as the Government's decision *not* to proceed with removal" and issued an order prohibiting the petitioner's removal. *Id.* at *1.

The Southern District of Texas likewise granted a motion for a temporary restraining order in *Maldonado v. Noem*, finding that ICE's attempt to remove a deferred action recipient "effectively nullify[ies] his deferred action." No. 4:25-CV-2541, 2025 WL 1593133, at *1 (S.D. Tex. June 5, 2025). The court found it was "likely that [the p]etitioner's detention and possible imminent deportation violate[d]" due process because the petitioner's *bona fide* determination of his U visa and deferred action status "arguably rendered him presumptively ineligible for removal" under a statute addressing the admission of nonimmigrants. *Id.*

In *Santiago v. Noem*, the Western District of Texas partially granted a habeas petition on due process grounds where a Deferred Action for Childhood Arrivals ("DACA") recipient was detained by ICE. No. EP-25-CV-361-KC, 2025 WL 2792588 (W.D. Tex. Oct. 2, 2025). Like here, the respondents argued that a "grant of deferred action . . . does not preclude DHS from commencing removal proceedings at any time." *Id.* at *6. The court rejected that reading of deferred action and held that "[w]here an individual is protected from removal through deferred action, their detention serves no valid purpose." *Id.* at *12.

The District of New Mexico reached a similar conclusion in another case involving the detention of a DACA recipient. *Gamez Lira v. Noem*, No. 1:25-CV-00855-WJ-KK, 2025 WL 2581710 (D.N.M. Sept. 5, 2025). The court granted the petitioner's request for a temporary restraining order in that case, finding a likelihood of success on the merits of both the substantive and procedural due process claims. *Id.* at *2-3. On procedural due process, the court noted that the petitioner had "lived under the understanding that he was unlikely to be subject to enforcement proceedings" and "justifiably expected that his DACA status would not terminate without notice and the opportunity to respond." *Id.* at *3. But "[i]n contravention of that expectation, [the petitioner] was not provided any process at all in the course of his arrest, processing, and detention in immigration custody" and thus showed a likelihood of success on the merits. *Id.* As to substantive due process, the court held that in "the context of immigration, a period of detention must 'bear[] a reasonable relation to the purpose for which the individual was committed.'" *Id.* at *2 (alteration in original) (quoting *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)). The court concluded that petitioner's

detention bore no relationship to any legitimate purpose because petitioner's recent DACA renewal itself showed that he was not a flight risk and because he was authorized for employment and providing for four children in the United States. *Id.* Again, the court found in the petitioner's favor.

Respondents have shown no reason to depart from the weight of authority here. In consideration of the current record and the case law addressing these issues, petitioner has shown serious questions going to the merits of his procedural due process claim.

## B.    Irreparable Harm

Petitioner has established that he will suffer irreparable harm in the absence of immediate relief. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Petitioner has a son he must provide and care for and a job he risks losing with every missed workday. He also suffered injuries during his detention that were serious enough to warrant hospitalization. It is unclear whether he has received adequate medical care while in detention or whether any of those injuries are ongoing. *See Hernandez*, 872 F.3d at 995 (describing the risk of "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained"). In the absence of urgent relief, petitioner will likely suffer material and irreparable harms.

## C.    Balance of Equities and Public Interest

Lastly, the balance of equities and public interest—which merge in this case because the government is a party—tips sharply in petitioner's favor. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Respondents' only arguments are that the government has a strong interest in enforcing its immigration laws and that petitioner can obtain relief through the administrative immigration process. Resp'ts Opp'n 11-12. The first point is well-taken; the government undoubtedly has a strong interest in the enforcement of its laws. However, as many courts in this Circuit have recently held, "[t]he only potential injury the government faces is a short delay in detaining [petitioner] if it ultimately demonstrates to a neutral decisionmaker by the preponderance of the evidence that [his] detention is necessary to prevent danger to

the community or flight." *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 WL 2637503, at *14 (N.D. Cal. Sept. 12, 2025). "Given the low risk that [the] petitioner would cause harm to others or flee, in light of his strong family ties, financial responsibilities and work commitments, such government expenditure in this case would not greatly serve the interests of the general public." *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). Expenditure of further resources in detaining petitioner are not in the public's interest. This final *Winter* factor tips sharply in petitioner's favor.

## D.    Scope of Relief

Petitioner's immediate release is required to restore the status quo, meaning "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (internal quotation omitted). Respondents argue that petitioner is seeking a mandatory injunction. Resp'ts Opp'n 6-7. However, "[m]andatory" relief, as opposed to "prohibitory" relief, "go[es] beyond 'maintaining the status quo' and preventing further constitutional violations." *Hernandez*, 872 F.3d at 997 (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)). The relief requested here seeks to restore the status quo by returning petitioner to the status held "the moment before prior to [the petitioner's] likely illegal detention" and is therefore prohibitory in nature. *Pablo Sequen v. Kaiser*, No. 25-cv-06487-PCP, 2025 WL 2203419, at *3 (N.D. Cal. Aug. 1, 2025) (collecting cases). Additionally, even if the relief were to be deemed mandatory, petitioner would meet the "higher standard" required because (1) "'extreme or very serious damage will result'" from his detention "that is not 'capable of compensation in damages,'" and (2) "the merits of [his] case are not 'doubtful.'" *Hernandez*, 872 F.3d at 999 (quoting *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879). Petitioner's immediate release is thus necessary and proper under either standard.

## E.    Security

"The court may issue a . . . temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Under Rule 65(c), courts have

"'discretion as to the amount of security required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis in original) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). In fact, "'[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Id.* (alteration in original) (quoting *Jorgensen*, 320 F.3d at 919). No prejudice to respondents will result from the issuance of the temporary restraining order here. Accordingly, the Court exercises its discretion to issue the temporary restraining order without requiring security.

## CONCLUSION

For the reasons stated above, petitioner's Motion for a Temporary Restraining Order, ECF [2], is GRANTED. The Court hereby ORDERS respondents to immediately release petitioner from custody and ENJOINS respondents, and their agents and employees, from re-detaining petitioner without providing notice to petitioner's counsel and this Court, and holding a pre-detention hearing. This temporary restraining order shall take immediate effect and shall remain in effect until November 13, 2025, or further order of this Court.

In addition, the parties are ordered to file a joint status report within one week of the date of this Order. The joint status report must state whether petitioner intends to request that the temporary restraining order be converted into a preliminary injunction and must include a briefing schedule on the habeas petition or, if the parties do not believe that further briefing on the habeas petition will be helpful, may instead request its submission on the current record. Any further briefing on the habeas petition should address the case law and reasoning described in this Order.


IT IS SO ORDERED.


DATED this 30th day of October, 2025.

Adrienne Nelson
United States District Judge

13