IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| F.R.P.,<br><br>    Petitioner,<br><br> v.<br><br>CAMMILLA WAMSLEY, Seattle Field Office Director, Immigration and Customs Enforcement and Removal Operations ("ICE"/"ERO"); TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement ("ICE"); U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; KRISTI NOEM, Secretary of the U.S. Department of Homeland Security ("DHS"); and U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>    Respondents. | Case No.: 3:25-cv-01917-AN<br><br>Agency Case No.: A218 030 879<br><br>OPINION AND ORDER |

Petitioner F.R.P., a Mexican citizen, is a recognized victim under the Violence Against Woman Act. The U.S. Department of Homeland Security ("DHS") granted petitioner deferred action in 2023, and his application for permanent residency is now pending. On October 17, 2025, U.S. Immigration and Customs Enforcement ("ICE") officers detained petitioner despite his deferred action status and without making an individualized determination as to whether petitioner was a flight risk or a danger to the community. That same day, petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 and a motion for a temporary restraining order ("TRO"). Following briefing and a hearing, the Court granted the TRO and ordered petitioner's immediate release on October 30, 2025. On November 18, 2025, an Immigration Judge terminated petitioner's removal proceedings. Respondents now seek to assess a $5,000 fee against petitioner under 8 U.S.C. § 1815. The parties have filed additional briefing on the habeas petition, including briefing on the fee assessment. Having heard the parties at the TRO hearing, the Court finds that further oral argument will not help resolve this matter. *See* Local R. 7-1(d)(1). For the following

1

reasons, the Court now grants petitioner's writ of habeas corpus and cancels the 8 U.S.C. § 1815 fee accordingly.

## LEGAL STANDARD

District courts are authorized under 28 U.S.C. § 2241 to hear applications for habeas corpus "within their respective jurisdictions" by any person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c)(3). Because a writ of habeas corpus is a civil proceeding, "[t]he petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). The writ is equally available to noncitizens in immigration detention. *See Demore v. Kim*, 538 U.S. 510, 517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). Although 28 U.S.C. § 2241 requires the petitioner to be "in custody" at the time of filing, "once the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application." *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).

## BACKGROUND

The factual and procedural background in this case is described at length in the Court's opinion and order granting petitioner's TRO (the "TRO order"). *See* Op. & Order of October 30, 2025, ECF 19. Since the issuance of the TRO order, the following events have occurred.

At 3:07 p.m. on October 31, 2025, the day after the Court ordered petitioner's immediate release, the Court was informed that petitioner remained in custody. At 4:20 p.m., respondents informed the Court via email that petitioner had finally been released. Upon his release, petitioner was given documents relating to his detention, including a Notice of Fee Assessment under 8 U.S.C. § 1815 ("Form 1815"). Pet'r Suppl. Reply, ECF 23, at 2 & Ex. A.

Form 1815 states that it "provides notice of" certain determinations and, based on those determinations, requires petitioner "to pay a fee in the amount of $5,000" which is "due now." *Id.* at Ex. A at 1. Three potential determinations are listed, each with a checkbox: (1) "You are not a citizen or

national of the United States," (2) "You have been apprehended by [DHS] between ports of entry, and"

(3) "You are inadmissible under [Immigration and Nationality Act] § 212(a), 8 U.S.C. § 1182(a)." *Id.*

Failure to pay this fee "has consequences, including the accrual of interest, administrative costs, and late

payment penalty," which can be avoided "if payment in full is received within thirty (30) days of this Notice

date." *Id.* Form 1815 also warns that failure to "promptly pay this debt" may lead DHS to, in relevant part,

"[t]ake this debt into consideration, to the extent permitted by law, in future immigration-related

proceedings, including admissibility determinations." *Id.* To dispute the fee, a recipient "may file a written

dispute . . . within 30 days from the date of the issuing immigration officer's signature." *Id.* at Ex. A at 2.

A fee recipient "may request to inspect and copy records related to this debt[,] . . . to enter into a reasonable

written repayment agreement that is acceptable to the agency[,] . . . [and] may submit an offer in

compromise to settle this debt." *Id.* "Any such dispute, request to inspect and copy records, request of a

reasonable written repayment agreement, or offer in compromise must be submitted to

INAfees@cbp.dhs.gov." *Id.*

    Petitioner's Form 1815 was signed by an issuing immigration officer on October 17, 2025. *Id.*

Petitioner did not sign the form, and under the signature line titled "Signature of person served," a box is

checked stating "Refusal to sign." *Id.* Of the three checkboxes described above, only one is checked: that

petitioner is "not a citizen or national of the United States." *Id.* at Ex. A at 1. The boxes indicating whether

petitioner has "been apprehended by [DHS] between ports of entry" and whether he is "inadmissible" are

empty. *Id.*

    On November 18, 2025, an Immigration Judge terminated petitioner's removal proceedings. *Id.* at

2 & Ex. B at 1. The Immigration Judge's order contains a series of checked boxes indicating:

> "Respondent . . . has filed a motion to terminate these proceedings, and the non-moving
> party was accorded notice and an opportunity to respond. The motion is . . . unopposed.
> After considering the facts and circumstances, the immigration court orders that the motion
> to terminate is granted . . . without prejudice . . . for the reasons stated in the motion."

*Id.* at Ex. B at 1. The order was signed by the Immigration Judge on November 18, 2025. *Id.* at Ex. B at

2.

On November 19, 2025, petitioner filed a supplemental brief in support of his habeas petition. Pet'r Suppl. Reply. That brief largely argues that the 8 U.S.C. § 1815 fee violates petitioner's procedural due process rights and should therefore be resolved alongside the habeas petition. *Id.* at 2-7. On December 1, 2025, respondents filed objections to petitioner's request, arguing that habeas is not the proper mechanism to cancel the 8 U.S.C. § 1815 fee. Resp'ts Objs., ECF 26, at 1-2. Respondents also noted that that they are "seeking clarification from ICE counsel regarding whether ICE will withdraw the fee" and that "[t]he government had hoped to take this issue off the Court's docket." *Id.* at 2. On December 3, 2025, petitioner informed the Court via email that he does not intend to file a reply to respondents' objections. On January 13, 2026, respondents filed a status report stating that they would not withdraw the $5,000 fee, ECF 27.

## DISCUSSION

### A.     Petitioner's Detention

As a threshold matter, petitioner may only be subject to discretionary detention under 8 U.S.C. § 1226, and not to mandatory detention under 8 U.S.C. § 1225. This issue is well-trodden. Respondents have argued in courts across this country that they are entitled to subject nearly any noncitizen to mandatory detention under Section 1225. This Court recently joined dozens of its peers in rejecting this now-familiar refrain. *See L.A.E. v. Wamsley*, No. 3:25-cv-01975-AN, 2025 WL 3485763, at *3 (D. Or. Dec. 4, 2025) (collecting cases). This Court explained in *L.A.E. v. Wamsley* that Section 1225 "'authorizes the Government to detain certain [noncitizens] *seeking* admission into the country,' while Section 1226(a) and (c) 'authorizes the Government to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings.'" *Id.* (alterations and emphases in original) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)). In so holding, this Court cited another judge within this District who recently "collected more than thirty cases rejecting respondents' 'dubious assertion' that Section 1225 empowers to arrest and hold any noncitizen present without legal status, whether detained at a point-of-entry or after spending years in the country." *Id.* (quoting *J.Y.L.C. v. Bostock*, No. 3:25-cv-02083-AB, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025)). Nothing about this case suggests that the Court should deviate from the overwhelming weight of authority. As the Southern District of New York recently stated, "this

4

Court need not spill much ink on this issue given the legions of decisions reaching this consensus," including this Court's own recent rulings. *McDonald v Francis*, No. 25-CV-09355 (JAV), 2025 WL 3295906, at *3 (S.D.N.Y. Nov. 26, 2025), *appeal docketed*, No. 26-204 (2d Cir. Jan. 30, 2025) (cleaned up). Petitioner is not subject to mandatory detention here.

Having determined that petitioner may only be subject to discretionary detention under Section 1226, he "'is undoubtedly entitled to a bond hearing before an immigration judge.'" *J.Y.L.C.*, 2025 WL 3169865, at *3 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475 (S.D.N.Y. 2025)). Petitioner has since had that hearing, and based on petitioner's unopposed motion, the Immigration Judge has terminated petitioner's removal proceedings. *See* Pet'r Suppl. Reply Ex. B. The Court's previous findings on petitioner's due process claim thus apply now with equal, if not greater, force. *See* Op. & Order of October 30, 2025. Indeed, respondents do not provide any additional authority or argument challenging the Court's previous findings. *See* Resp'ts Objs.

The Court now finds, based on the uncontested authority described in the Court's TRO order, that petitioner has established a due process violation. Petitioner's writ of habeas corpus is granted accordingly.

## B.    8 U.S.C. § 1815 Fee

The final issue remaining is the 8 U.S.C. § 1815 fee. Petitioner argues this fee violates his due process rights. Pet'r Suppl. Reply 2-7. Specifically, he argues that the fee charges him only with being a noncitizen, that the fee is punitive as applied, and that the fee may not be imposed without notice and an opportunity to be heard. *Id.* Respondents counter that the Court should not address the fee at all because this habeas proceeding is an improper vehicle for such challenge. Resp'ts Objs., ECF 26, at 1-2.

The entirety of respondents' argument is that habeas proceedings challenge unlawful confinement, not "every aspect of the government's actions around the confinement." *Id.* As support, respondents cite only *United States ex rel. Bilokumsky v. Tod*, a century-old case that predates the modern habeas statute by decades. 263 U.S. 149 (1923); *see* Act of June 25, 1948, ch. 646, 62 Stat. 869 (revising and codifying Title

28 of the U.S Code).[1]  *Bilokumsky* provides, in relevant part, that "if sufficient ground for [a petitioner's] detention by the government is shown, [the petitioner] is not to be discharged for defects in the original arrest or commitment."  263 U.S. at 158.  Even ignoring the outdated statute, this holding is inapposite because it applies when the government has shown a "sufficient ground for [a petitioner's] detention," *id.*, and respondents have made no such showing here.  Here, the question is whether a Court granting habeas relief correcting an unconstitutional detention may also address a fee resulting from that wrongful detention.  Respondents offer no authority on this question.

Courts may grant habeas relief "as law and justice require."  28 U.S.C. § 2243; *see Brown v. Davenport*, 596 U.S. 118, 132 (2022) ("This language, the Court recognized, serves as 'authorization to adjust the scope of the writ in accordance with equitable and prudential considerations.'" (quoting *Danforth v. Minnesota*, 552 U.S. 264, 278 (2008))).  Here, law and justice require cancellation of petitioner's 8 U.S.C. § 1815 fee.

The Ninth Circuit has held that "the recovery of wrongly paid fines is 'incident to the vacating and setting aside' of the wrongful conviction."  *Telink, Inc. v. United States*, 24 F.3d 42, 46-47 (9th Cir. 1994) (quoting *United States v. Lewis*, 478 F.2d 835, 836 (5th Cir. 1973)).  While "the imposition of a fine, *by itself*, is not sufficient to meet § 2254's jurisdictional requirements," *Bailey v. Hill*, 599 F.3d 976, 979 (9th Cir. 2010) (emphasis added), petitioner does not challenge the fine by itself.  It is uncontested that the primary relief petitioner sought was release from wrongful detention.  The Court has since granted that relief and thus finds it appropriate to set aside the 8 U.S.C. § 1815 fee that stems directly from petitioner's wrongful detention.  After all, "in constitutional adjudication as elsewhere, equitable remedies are a special

---

[1] Respondents' chosen passage is even further removed from modern habeas law.  Respondents quote the following: "'[H]abeas corpus is not like an action to recover damages . . . , but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment.'"  Resp'ts Objs. 2 (quoting *Bilokumsky*, 263 U.S. at 158).  That entire passage is taken from the case *Nishimura Ekiu v. United States*, 142 U.S. 651, 662 (1892), which itself addressed the Immigration Act of 1891.  As the Supreme Court recently acknowledged, the habeas framework contemplated by *Nishimura*, and thus at issue in the chosen passage, differs significantly from modern law.  *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 128 (2020) (explaining the "finality era" cases, including *Nishimura*, "were based not on the Suspension Clause but on the habeas statute and the immigration laws then in force.").

blend of what is necessary, what is fair, and what is workable." *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973) (footnote omitted). Setting aside this fee is necessary, fair, workable, and plainly just.

Moreover, the fee itself is unconstitutional as applied to petitioner. Most blatantly, because petitioner's Form 1815 only found that he was "not a citizen or national of the United States." Pet'r Suppl. Reply at Ex. A at 1. Conspicuously absent from petitioner's Form 1815 is any finding that he was "apprehended by [DHS] between points of entry" or that he is "inadmissible under INA § 212(a), 8 U.S.C. § 1182(a)." *Id.* Both are required under the statute. *See* 8 U.S.C. § 1815(a) (requiring payment of a fee "by any inadmissible alien at the time such alien is apprehended between ports of entry"). Whatever level of notice is required, it has not been met here.

Additionally, Form 1815 warns petitioner that the debt may be taken "into consideration . . . in future immigration-related proceedings, including admissibility determinations." Pet'r Suppl. Reply at Ex. A at 1. Petitioner argues that his Adjustment of Status application is currently pending, and that this fee may deprive him of his interests in that proceeding. *Id.* at 6. Respondents do not dispute this or offer any response to petitioner's remaining due process arguments.

Between the high amount of the fee and the potential impact on petitioner's admissibility determination, the Court finds that petitioner's private interest is significant. And, given that petitioner's Form 1815 does not even conform with the underlying statute, the risk of erroneous deprivation is high. Finally, the government's interest in fining petitioner for not being "a citizen or national of the United States" is miniscule. Pet'r Suppl. Reply at Ex. A at 1. Due process requires more than has been given here.

## CONCLUSION

For the reasons stated herein, petitioner's petition for writ of habeas corpus, ECF 1, is GRANTED. In fashioning a habeas writ, "a court has broad discretion in conditioning a judgment granting habeas relief" and in "dispos[ing] of habeas corpus matters 'as law and justice require.'" *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (quoting 28 U.S.C. § 2243). Here, the Court finds that law and justice require, pursuant to Section 1226(a), an individualized finding of dangerousness or flight risk by an Immigration Judge if petitioner is to be re-detained, and a cancellation of the 8 U.S.C. § 1815 fee arising out of petitioner's

unlawful detention. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1059, 1065 (9th Cir. 2008). The Court therefore ORDERS that respondents are PERMANENTLY ENJOINED from re-arresting or -detaining petitioner pursuant to 8 U.S.C. § 1225 and from enforcing the Form 1815 attached to petitioner's supplemental brief. If, at any time, respondents arrest or detain petitioner pursuant to 8 U.S.C. § 1226(a), the Court ORDERS that petitioner be provided reasonable notice and a hearing.

IT IS SO ORDERED.

DATED this 19th day of February, 2026.

Adrienne Nelson
United States District Judge